[Cite as *State v. Hill*, 2014-Ohio-919.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.     13 MA 1 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| FRANK HILL, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                   Court, Case No. 12CR783.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellee:            Attorney Paul Gains
                                   Prosecuting Attorney
                                   Attorney Ralph Rivera
                                   Assistant Prosecuting Attorney
                                   21 West Boardman Street, 6th Floor
                                   Youngstown, Ohio  44503


For Defendant-Appellant:           Attorney Donna Jewell McCollum
                                   201 E. Commerce Street, Suite 346
                                   Youngstown, Ohio  44503


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                                   Dated:  February 14, 2014

VUKOVICH, J.

{¶1} Defendant-appellant Frank Hill appeals from his sentence entered in the Mahoning County Common Pleas Court for assault and aggravated menacing. Three issues are raised in this appeal. The first one is what is the standard of review for felony sentencing? The second issue is whether the trial court considered mitigating factors in R.C. 2929.12(E)(3)-(5) and if the failure to consider those factors provides a basis for reversing the sentence. The third issue is whether the trial court allowed its personal opinion to govern the sentence imposed.

{¶2} For the reasons expressed below, in reviewing a felony sentence we will employ both the abuse of discretion standard and the clear and convincingly contrary to law standard. That said, in this case it makes no difference what standard is used because the result is the same. The record supports the sentence issued, and thus, the judgment of the trial court is hereby affirmed.

Statement of the Case

{¶3} In mid July 2012, Hill was involved in a head-on car collision, in which he was not at fault. Officer Lindsay Pallo, from the Youngstown Police Department, was called to the scene to investigate the crash. At the scene, Hill threatened to shoot Officer Pallo in the head, struck her in the ribs, attempted to pull her to the ground multiple times, and kicked her multiple times. The fight with Officer Pallo lasted 8 minutes. 12/12/12 Sentencing Tr. 4. She suffered a sprained neck, sprained lumbar region, sprained right rotator cuff, sprained right shoulder, sprained right elbow, sprained chest, tendinitis in the right shoulder, and severe large disc protrusion at the L5/S1 effacing the "thecal sac" on the spinal cord. 12/12/12 Sentencing Tr. 4.

{¶4} As a result of his actions, Hill was indicted for assault, in violation of R.C. 2903.12(A)(C)(3), a fourth-degree felony, resisting arrest, in violation of R.C. 2921.33(B)(D), a first-degree misdemeanor, and aggravated menacing, in violation of R.C. 2903.21(A)(B), a fifth-degree felony. 07/26/12 Indictment.

{¶5} Thereafter, the state and Hill reached a plea agreement. The second count of the indictment, resisting arrest, was dismissed and Hill pleaded guilty to the

remaining assault and aggravated menacing charges. The state agreed to stand silent at sentencing. After a plea colloquy, the trial court accepted the guilty pleas and set sentencing for a later date. 10/10/12 Plea Tr. 18; 10/12/12 J.E.

{¶6} After hearing the victim impact statement, Hill's character witness, and Hill's own statement, the trial court sentenced Hill to an 18-month sentence for assault and a 12-month sentence for aggravated menacing. The sentences were ordered to be served concurrent to each other. 12/19/12 J.E.; 12/12/12 Sentencing Tr. 21. Hill filed a timely appeal from that sentence.

Standard of Review

{¶7} Before we address the merits, this court is asked by the state to decide the standard of review used to review felony sentencing. Hill argues that we review his sentence for an abuse of discretion. The state argues that we are to only apply a clear and convincingly contrary to law standard of review as espoused in R.C. 2953.08(G)(2).

{¶8} Prior to the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, we consistently held that we would only reverse or modify a sentence if we clearly and convincingly found that the sentence is contrary to law. This standard of review is found in R.C. 2953.08(G)(2). That statute specifically indicates that felony sentences are not reviewed for an abuse of discretion.

{¶9} In *Foster*, the Ohio Supreme Court determined that portions of the felony sentencing statutes were unconstitutional, specifically statutory mandates that were required before a trial court could issue a non-minimum, maximum and/or consecutive sentence. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. It held that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at ¶ 100. Specifically, as to R.C. 2953.08(G), the statute regarding appellate review of felony sentences, the Court recognized that *Foster* would affect subsequent appellate review of sentences, noting that "[t]he appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies." *Id.* at ¶ 99.

**{¶10}** Those holdings in *Foster* created confusion among the appellate courts as to what standard of review was applicable in felony sentencing. Some courts applied both an abuse of discretion and clearly and convincingly contrary to law standards. Others only applied a clearly and convincingly contrary to law standard that was set forth in R.C. 2953.08(G)(2).

**{¶11}** In an attempt to dispel the confusion, in *State v. Kalish* the Ohio Supreme Court addressed what standard of review is to be employed when reviewing a felony sentence. 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. *Kalish* is a plurality decision.

**{¶12}** Justices Moyer, O'Donnell and O'Connor concluded that both an abuse of discretion and clearly and convincingly contrary to law standards were to be employed. *Id.* at ¶ 26. They explained it is a two-step approach. *Id.* First, an appellate court must examine "the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Id.* "If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *Id.* Specifically, an abuse of discretion standard of review is employed in reviewing the application of R.C. 2929.11 and 2929.12, which are not fact-finding statutes. *Id.* at ¶ 17.

**{¶13}** Judge Willamowski, sitting by assignment from the Third Appellate District, concurred in judgment only with the above three Justices and wrote a separate opinion. He opined that R.C. 2929.12 has always set forth its own standard of review as an abuse of discretion and that even prior to *Foster* that was the correct standard to apply when reviewing arguments that the trial court failed to comply with R.C. 2929.12. *Id.* at ¶ 39-42.

**{¶14}** The dissent, Justices Lanzinger, Pfeifer, and Lundberg Stratton, concluded that "*Foster*'s severance of certain statutes has neither changed the standard of review for felony sentences to abuse of discretion nor created a void in the standard of appellate review." *Id.* at ¶ 57. Thus, according to the dissent felony sentences were only to be reviewed under the mandates of R.C. 2953.08(G)(2),

which specifically states that an abuse of discretion standard of review does not apply. *Id.* at ¶ 66.

**{¶15}** Following *Kalish*, we have continually applied the two-step approach espoused by the plurality.

**{¶16}** The state, however, contends that our continued application of *Kalish* is incorrect in light of the general assembly's enactment of House Bill 86, which became effective in September 2011. House Bill 86 modified R.C. 2953.08 to include references to the mandatory statutory findings for imposition of consecutive sentences. These provisions in House Bill 86 were enacted in response to the Ohio Supreme Court's decision in *State v. Hodge.* 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768. In *Hodge*, the Ohio Supreme Court concluded, based on a United States Supreme Court decision, that statutory mandates for consecutive sentencing are not unconstitutional. *Id.* at ¶ 1-6, citing *Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711 (2009). The Ohio Supreme Court explained:

> Although we affirm the judgment below, we acknowledge that given the holding and reasoning of the United States Supreme Court in *Ice,* the General Assembly is no longer constrained by *Foster*'s holdings regarding the constitutionality of the consecutive-sentencing provisions invalidated in *Foster* and may, if it chooses to do so, respond with enactment of a statutory provision in light of *Ice*'s holding.

*Id.* at ¶ 6.

**{¶17}** Although House Bill 86 modified portions of R.C. 2953.08, subsection (G)(2), which provides that felony sentences are not reviewed for an abuse of discretion, was retained and remained unchanged.

**{¶18}** Due to the passage of House Bill 86 some appellate courts are concluding that the *Kalish* two-step standard of review is no longer applicable. Rather, R.C. 2953.08(G)(2) is only applicable and an abuse of discretion standard of review is no longer allowed. The Eighth Appellate District has explained:

> Coinciding with this revived version of R.C. 2929.14(C)(4) are amendments to R.C. 2953.08 governing the standard of review to be applied by appellate courts when reviewing consecutive sentences.

The former version of R.C. 2953.08(G)(2) was substantially similar in form to the version currently in effect. The former version required the court to "take any action * * * if it clearly and convincingly finds either of the following: (a) That the record does not support the sentencing court's findings under * * * division (E)(4) of section 2929.14, * * * (b). That the sentence is otherwise contrary to law."

In *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the supreme court considered the relevant standard of review in the post-*Foster* era in which the findings necessary to impose consecutive sentences under former R.C. 2929.14(E)(4) had been declared unconstitutional. A plurality of the court held that R.C. 2953.08(G)(2) was inapplicable because it expressly related to "findings" that had been abrogated as unconstitutional. Instead, the plurality set forth the following method of reviewing criminal sentences: (1) is the sentence contrary to law and (2) if not, was it an abuse of discretion. *Id.* at ¶ 14–19.

*Kalish,* as is any plurality opinion, is of "questionable precedential value." *See Kraly v. Vannewkirk,* 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994). Nevertheless, panels of this court have found it persuasive, at least insofar as it was applied to sentencing in the post-*Foster* era. *See, e.g., State v. Martinez,* 8th Dist. No. 96222, 2011-Ohio-5832, 2011 WL 5507367, ¶ 6, fn. 1.

The post-*Foster* era ended with the enactment of H.B. 86 and the revival of statutory findings necessary for imposing consecutive sentences under R.C. 2929.14(C)(4). By reviving the requirement for findings as a predicate for imposing consecutives, the ground offered by *Kalish* for rejecting the standard of review set forth in former R.C. 2953.08—that it could not stand as a standard of review for a statute that improperly required findings of fact before imposing consecutive sentences—was nullified. With the basis for the decision in *Kalish* no longer valid, and given that *Kalish* had questionable precedential value

in any event, we see no viable reasoning for continuing to apply the standard of review used in that case. Henceforth, we review consecutive sentences using the standard of review set forth in R.C. 2953.08.

*State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 7-10 (8th Dist.).

**{¶19}** The First and Twelfth Appellate Districts agree with the Eighth Appellate District. *State v. Kennedy*, 1st Dist. No. C-120337, 2013-Ohio-4221, ___ N.E.2d ___, ¶ 117; *State v. Crawford,* 12th Dist. No. CA2012–12–088, 2013–Ohio–3315. Currently, there is a dispute in the Eleventh District Court of Appeals as to whether H.B. 86 renders the *Kalish* holding inapplicable. *Compare State v. Rardin*, 11th Dist. No. 2012-P-0100, 2013-Ohio-4297 *with State v. Blair-Walker*, 11th Dist. No. 2012-P-0125, 2013-Ohio-4118. Other courts are still applying the *Kalish* plurality holding. *State v. Forney*, 2d Dist. No. 2012-CA-36, 2013-Ohio-3458, ¶ 33; *State v. Nguyen*, 4th Dist. No. 12CA14, 2013-Ohio-3170, ¶ 111; *State v. Robinson*, 5th Dist. No. CT2012-0005, 2013-Ohio-2893, ¶ 8-13; *State v. Keil*, 6th Dist. No. L-12-1237, 2013-Ohio-3468, ¶ 6; *State v. Anthony*, 7th Dist. No. 12JE2, 2013-Ohio-2955, ¶ 35; *State v. Brooks*, 9th Dist. No. 26437, 2013-Ohio-2169, ¶ 5-6.

**{¶20}** Recognizing the different appellate courts' stance on this issue, we are choosing to continue to employ both standards of review. Our reason for doing so can be illustrated by an example. If a trial court imposes a sentence that is within the statutory range and the record clearly shows that all statutory considerations are of record, but that record clearly shows the court had a demonstrable bias or prejudice, is a review court powerless? We conclude the better course is to answer that question in the negative. That said, as the below analysis shows, in this case, regardless of what standard is employed, the result is the same – the trial court did not err in rendering the sentence that it did.

First Assignment of Error

**{¶21}** "The trial court erred by abusing its discretion in failing to consider mitigating factors listed in O.R.C. 2929.12 prior to sentencing Defendant/Appellant to the maximum term of incarceration."

**{¶22}** A sentencing court must consider the principles and purposes of sentencing espoused in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Mathis,* 109 Ohio St .3d 54, 2006–Ohio–855, ¶ 38. The Ohio Revised Code does not mandate that the sentencing judge use specific language or make specific findings on the record when considering these statutes. *State v. Arnett,* 88 Ohio St.3d 208, 215 (2000); R.C. 2929.12.

**{¶23}** Here, both the transcript and the judgment entry indicates that the trial court considered the record, presentence investigation (PSI), the purposes and principles of sentencing espoused in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. 12/19/12 J.E.; 12/12/12 Sentencing Tr. 15-16.

**{¶24}** Specifically, as to the recidivism factors, during the sentencing hearing, the trial court found that it did not "believe" there is anything to indicate that recidivism is less likely. 12/12/12 Tr. 16. Hill concludes that this statement is an indication that the trial court did not consider R.C. 2929.12(E)(3)-(5) when it sentenced him. Division (E) lists factors that show recidivism is less likely. Provisions (3) through (5) provide:

> (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
>
> (4) The offense was committed under circumstances not likely to recur.
>
> (5) The offender shows genuine remorse for the offense.

R.C. 2929.12(E)(3)-(5).

**{¶25}** Hill argues that the trial court did not consider the fact that he has not committed many offenses since 2000 and this shows he led a law-abiding life for a significant number of years. Furthermore, he contends that his statement to the court at sentencing indicated that he was sorry for what he did and that his reaction, according to him, was caused because he had just been in a head-on collision and had hit his head and suffered injuries. 12/12/12 Sentencing Tr. 13-14. The witness who testified on his behalf, the mother of one of his children, indicated that he is a good man and that she and her daughter, who Hill raised, were previously in a car accident that almost took both their lives. 12/12/12 Sentencing Tr. 12. She stated

that that was going through his mind after the instant car accident and that caused his frustration and anger and caused him to be scared. 12/12/12 Sentencing Tr. 12-13. However, she also admitted that Hill does not know how to express himself at times. 12/12/12 Sentencing Tr. 11.

**{¶26}** In reviewing his criminal record, the PSI shows that in 2000 he was convicted in Pennsylvania of theft by deception and disorderly conduct. In 2003 he was convicted and fined for having a vicious dog. In 2011, in Pennsylvania, he was convicted of disorderly conduct and was fined. His record before 2000 is extensive. As aforementioned, the trial court stated that it considered his record. Furthermore, the trial court gave his record the appropriate weight given its extensiveness and the fact that he was convicted of an offense in 2011. This does not demonstrate that the offender lead a law abiding life for a number of years.

**{¶27}** Likewise, it is apparent from reading the transcript that the trial court did consider the above statements regarding remorse and his character in determining the appropriate sentence. The trial court stated:

Certainly the statements from the witness that the defendant produced were statements indicating that the defendant is not all bad. * * * But I do believe that a judge in sentencing anyone needs to take into account not only the wrong that they've done, but also the – whether or not there's any good in them.

So, I mean, this is all pretty simple to me. It's a basic rule of life. It's a basic rule for everyone to follow, man. You know, you don't tug on superman's cape. You don't spit into the wind. You don't pull the mask off the old Lone Ranger, and you don't disrespect a cop. You just can't do it. It's just one of those things that there's no justification, no excuse, no explanation for someone who assaults a peace officer. Think of that. Assault on a peace officer, someone there to make peace who's assaulted. It's a moral sin. It is something for which I don't know if the police officer came in here and said I want this guy to get probation, if I could give you probation even then because there's something basically wrong, something truly bad about somebody who

would assault a peace officer, someone who's called to the scene of an automobile accident to sort it out and make sure everybody's rights are protected and make sure everybody is properly advised and treated and that the matter is cleaned up properly and that nobody else gets hurt, nobody else is involved. And there's this police officer who comes to the scene and is trying to sort things out and you threaten to shoot her head off. You threaten to do bad things to her. And you get into such a rage, such an uncontrollable frenzy, that there's nothing left to do but arrest you, calm you down somehow, do something to stop what's going on here and make sure that nobody gets hurt and that your conduct is controlled.

I agree with what the police officer said when she started. She said I know this is part of my job. And believe me, I fight with that when I have cases like this because a police officer going to a bar to break up a fight, part of the deal is you may get hit, you may get punched, you may get knocked down, but you sign up for that. So some of that is a part of the job. But going to investigate an automobile accident and having somebody threaten to kill you and then having somebody when you try to arrest them assault you, hurt you, disrespect you, nobody signs up for that. That's just really bad stuff.

12/12/12 Sentencing Tr. 17-19.

**{¶28}** The trial court's reasoning displays that it considered all relevant factors and the facts of the case and when weighing those factors and facts it did not find that recidivism was less likely. Furthermore, that conclusion is sound.

**{¶29}** This assignment of error lacks merit.

<u>Second Assignment of Error</u>

**{¶30}** "The trial court abused its discretion in allowing a personal opinion to govern the sentence imposed."

**{¶31}** Hill contends that the statements the trial court made during the sentencing hearing regarding it being a moral sin to assault a police officer was an indication that it had already determined that it would impose a prison term. He also

asserts that the trial court indicated to the prosecutor that Hill should have been indicted for a higher felony.

**{¶32}** Both of these assertions are factually incorrect. First, regarding the position that the trial court already predetermined that it would impose a prison term is proven wrong by the trial court's own statements at sentencing:

> From reading the police reports regarding these matters, I don't do sentencing – I don't take these home and figure out the night before what I'm going to do as some judges do. I feel that is inappropriate. It means that this hearing means nothing if I've already decided what I'm going to do. So I do read these things for the first time today, and they are fairly lengthy so I need just a couple of minutes while I'm doing that.

12/12/12 Sentencing Tr. 16-17.

**{¶33}** Admittedly, the trial court did discuss that it was a moral sin to commit an assault on a peace officer. The statement is provided in the portion of the sentencing transcript that is regurgitated in the first assignment of error. However, that statement when read in context, shows that the trial court was considering everything when sentencing Hill. As the court explained, this was not a situation where the police officer was breaking up a fight at a bar. In those situations, getting hit, punched and knocked down is part of the job. However, here the officer was responding to a car accident. This was not a situation where getting punched would be considered part of the job. Thus, the trial court's analysis does not show a predetermination for the sentence imposed.

**{¶34}** As to the allegation that the trial court indicated to the state that it should have charged Hill with a higher felony, this statement is also incorrect. After the victim gave her statement, the trial court asked the following questions to the prosecutor:

> THE COURT: What's your recommendation?
>
> MR. McBRIDE [prosecutor]: It was to stand silent in this matter, Your Honor.
>
> THE COURT: This was originally a felony four. It was never anything greater than that?

MR. McBRIDE: Yes, Your Honor. And I believe several of the diagnosis that Officer Pallo received were after the case had been indicted and pled. So that's why we're here on a felony four.

12/12/12 Tr. 7-8.

**{¶35}** This conversation does not clearly indicate that the trial court believed that Hill should have been charged with a higher degree felony. Furthermore, what Hill was originally charged with is allowed to be considered at sentencing. *State v. Parsons*, 7th Dist. No. 12BE11, 2013-Ohio-1281, ¶ 18, citing *State v. Starkey,* 7th Dist. No. 06MA110, 2007–Ohio–6702, ¶ 2; *State v. Cooey,* 46 Ohio St.3d 20, 35, 544 N.E.2d 895 (1989). Thus, the inquiry as to whether the charge he was pleading to was a reduced charge was relevant to the court in determining the appropriate sentence. Therefore, simply considering the question asked by the trial court, it cannot be concluded that the trial court was implicitly indicating that Hill should have been charged with a higher degree felony. This assignment of error also lacks merit.

Conclusion

**{¶36}** In conclusion, all assignments of error lack merit. The sentence imposed is supported by the record and, thus, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, P.J., concurs in judgment only; see concurring in judgment only Opinion.

DeGenaro, P.J., concurring in judgment only.

Consistent with the analysis from the Eighth District as noted by the majority, along with that from the First District noted below, we should join our sister districts in the conclusion that that R.C. 2953.08(G)(2), as set forth in House Bill 86, provides the standard of review in the post-*Foster* era. That statute specifically indicates that felony sentences are not reviewed for an abuse of discretion, a more deferential standard of review. Instead, appellate courts are to determine whether the record demonstrates the sentence is clearly and convincingly contrary to law, a less deferential standard. In other words, the trial court's sentence must be clearly and

convincingly supported by the record and also consistent with Ohio's sentencing statutes in order to be affirmed on appeal. I concur in the majority's judgment, because when applying the R.C. 2953.08(G)(2) standard of review, the decision of the trial court should be affirmed.

In addition to the Eighth District's decision in *Venes*, *see* Majority Opinion at ¶19, the First District recently provided a well-reasoned analysis of this issue in *State v. White,* 2013-Ohio-4225, 1st. Dist. Hamilton No. C-130114, 997 N.E.2d 629, outlining the other districts that have stepped away from *Kalish* in the wake of H.B. 86:

> We disagree with Mr. White's assertion that we should review his sentence for an abuse of discretion. The legislature has been explicit that "[t]he appellate court's standard for review [of a felony sentence] is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). Rather, the standard is the one set forth by statute:
>
> > The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
> >
> > The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
> >
> > > (a) That the record does not support the sentencing court's findings * * *;

> (b) That the sentence is otherwise contrary
> to law.

R.C. 2953.08(G)(2).

True, we have in the past applied the abuse of discretion standard urged by Mr. White. That standard was provided for by a plurality of the Supreme Court of Ohio in *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The *Kalish* approach asks (1) whether the sentence is clearly and convincingly contrary to law, i.e. whether the trial court adhered to the applicable rules and statutes in imposing the sentence, and (2) if it is not contrary to law, whether the sentence nevertheless constitutes an abuse of discretion. *Id.* at ¶26. The *Kalish* plurality opinion was an outgrowth of the Supreme Court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, which declared unconstitutional portions of Ohio's felony sentencing statutes that required judges to make certain findings before imposing maximum, consecutive, or more than the minimum sentences. The *Kalish* plurality is best understood as operating from the premise that because the findings requirements were unconstitutional and excised from the law, it also made sense to remove the standard of review that the legislature had crafted in conjunction with the findings requirements.

Subsequent to *Kalish*, however, the United States Supreme Court made clear that it was constitutionally permissible to require judicial fact-finding as a prerequisite for the imposition of consecutive sentences. *See Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). The Ohio Supreme Court subsequently acknowledged that the legislature could reenact consecutive sentence finding requirements, *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶36, and the legislature responded by enacting 2011 Am.Sub.H.B. No. 86. ("H.B. 86"). The new legislation,

effective September 30, 2011, revived the judicial fact-finding requirement for consecutive sentences, but did not revive the requirement for maximum and more than minimum sentences.

Prior to the enactment of H.B. 86, the portions of Ohio's sentencing laws found unconstitutional in *Foster* remained part of the Revised Code. H.B. 86 cleaned up the Code by removing the provisions found unconstitutional in *Foster*, but not reenacted in H.B. 86. 2011 Am.Sub.H.B. No. 86, Section 2. Thus, the provisions requiring findings for maximum and more than minimum sentences that the legislature did not intend to revive were explicitly repealed. *Id.* At the same time, H.B. 86 specifically reenacted the standard of review provisions of R.C. 2953.08(G)(2) that had been rejected by the *Kalish* plurality. 2011 Am.Sub.H.B. No. 86, Section 1.

We presume the legislature knew what it was doing when it reenacted the R.C. 2953.08(G)(2) standard of review. And we cannot justify applying an abuse of discretion standard where the legislature has explicitly told us that the standard of review is not an abuse of discretion. Thus, henceforth, we will apply the statutory standard rather than the *Kalish* plurality framework to our review of felony sentences.

Our decision today is consistent with the approach of the other Ohio appellate districts that have directly considered the issue since the enactment of H.B. 86. *See State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶10 ("By reviving the requirement for findings as a predicate for imposing consecutives, the ground offered by *Kalish* for rejecting the standard of review set forth in former R.C. 2953.08—that it could not stand as a standard of review for a statute that improperly required findings of fact before imposing consecutive sentences—was nullified."); *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, 2013 WL 3156521 (concluding that the statutory standard applies to all felony sentences, not just those where findings are

required); *State v. Crawford*, 12th Dist. Clermont No. CA2012–12–088, 2013-Ohio-3315, 2013 WL 3946242, ¶6 ("[F]rom this day forward, rather than continue to apply the two-step approach as provided by *Kalish*, we find" that the standard in R.C. 2953.08(G)(2) applies to all felony sentences); *State v. Worth*, 10th Dist. Franklin No. 10AP–1125, 2012-Ohio-666, 2012 WL 554457, ¶83 (applying statutory test and noting that, as a plurality opinion, *Kalish* is of limited precedential value); *State v. Blair–Walker*, 11th Dist. Portage No. 2012–P–0125, 2013-Ohio-4118, 2013 WL 5347222 ("[W]e no longer apply the two-step analysis contained in the 2008 *Kalish* case to defendants sentenced under H.B. 86's enactment. Rather, we apply R.C. 2953.08(G) and the clear and convincing standard"); *see also State v. Fletcher*, 3rd Dist. Auglaize No. 2–13–02, 2013-Ohio-3076 (continuing to apply R.C. 2953.08 after *Kalish*).

*White, supra*, ¶5-10.

*See also State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶7 (applying R.C. 2953.08(G)(2) standard of review in a post-H.B. 86 appeal without reference to *Kalish*); *State v. Rodeffer*, 2d Dist. No. 25574, 2013-Ohio-5759, ¶29. ("In order to be consistent with the approach of other Ohio appellate districts that have already considered this issue in light of H.B. No. 86, we will no longer apply the two-part test in *Kalish* when reviewing felony sentences controlled by H.B. 86. From now on we will use the standard of review set forth in R.C. 2953.08(G)(2).")

The Majority's Opinion at ¶20 needs clarification. Although it correctly states that the Eleventh District is split on the issue, the other districts cited to therein, including this one, did not discuss whether or not H.B. 86 legislatively replaced the *Kalish* standard of review with R.C. 2953.08(G); the issue was never raised in any of those cases. Thus, the majority has mischaracterized the state of the law on this issue among Ohio's twelve appellate districts.

Although R.C. 2953.08(G)(2), the provision indicating that a felony sentence is not reviewed for an abuse of discretion, was specifically retained and remained

unchanged by H.B. 86, we must return to this standard of review in light of the judicial and legislative give-and-take with respect to felony sentencing that has occurred over the past decade and a half, beginning with S.B. 2 enacted in Ohio in 1996, through *Apprendi, Blakely* and *Foster* and their respective progeny, and culminating most recently with H.B. 86, effective in 2011. The reasoning articulated by the courts in *Venes* and *White* in support of the conclusion that post-H.B. 86 the standard of review of R.C. 2953.08(G)(2) supplanted the *Kalish* two-step analysis is persuasive.

Though a consensus was reached on little else, a majority of the *Kalish* court agreed that prior to *Foster*, the appropriate standard of review was the clearly and convincingly contrary to law approach provided by R.C. 2953.08(G)(2). *Kalish* at ¶9-10 (O'Connor, J., plurality opinion); ¶43-49 (Lanzinger, J., dissenting opinion). The touchstone of the *Kalish* decision was the appropriate standard of review in felony sentencing appeals following *Apprendi, Blakely* and *Foster*, given that trial courts' sentencing discretion was no longer statutorily constrained as a result of that line of cases. In crafting the two-prong approach, the O'Connor plurality opinion concluded that *Foster* did indeed change the standard of review. *Kalish* at ¶14-19 (O'Connor, J., plurality opinion). Specifically, in addition to conducting a clearly and convincingly contrary to law analysis, the O'Connor plurality added the abuse of discretion review. By contrast, the Lanzinger dissent concluded that the standard of review remained unchanged by *Foster*, and that "[i]n reviewing any felony sentence, an appellate court must determine whether the record clearly and convincingly demonstrates that the sentence is contrary to law. R.C. 2953.08(G)(2) * * * This court should not impose the more deferential abuse-of-discretion standard when the statute has expressly rejected that standard." *Kalish* at ¶43, 66 (Lanzinger, J., dissenting).

Since *Kalish*, in the wake of *Ice* and *Hodge*, the General Assembly has specifically opted to re-institute constraints on a trial court's sentencing authority by enacting H.B. 86:

> SECTION 11. In amending division (E)(4) of section 2929.14 and division (A) of section 2929.41 of the Revised Code in this act, it is the intent of the General Assembly to simultaneously repeal and revive the

amended language in those divisions that was invalidated and severed by the Ohio Supreme Court's decision in *State v. Foster* (2006), 109 Ohio St.3d 1. The amended language in those divisions is subject to reenactment under the United States Supreme Court's decision in *Oregon v. Ice* (2009), 555 U.S. 160, and the Ohio Supreme Court's decision in *State v. Hodge* (2010), ___ Ohio St.3d ___, Slip Opinion No. 2010–Ohio–6320 and, although constitutional under *Hodge*, *supra*, that language is not enforceable until deliberately revived by the General Assembly.

Am.Sub.H.B. No. 86, 2011 Ohio Laws File 29.

Thus, in effect, the standard of review has come full circle. Further, Justice Lanzinger's separation-of-powers point in the *Kalish* dissent resonates more sharply now. *Kalish* at ¶66 (Lanzinger, J., dissenting.) Courts cannot apply a standard of review that is expressly prohibited by the legislature. Instead, appellate courts are to determine whether the record demonstrates the sentence is clearly and convincingly contrary to law, rather than the more deferential abuse of discretion standard of review. In other words, the trial court's sentence must be clearly and convincingly supported by the record and clearly and convincingly consistent with Ohio's sentencing statutes in order to be affirmed on appeal.

Moreover, the Majority's concerns at ¶21 are unfounded because although the R.C. 2953.08(G) standard somewhat constrains appellate review, it would still allow for reversal where "the record clearly shows the [trial] court had a demonstrable bias or prejudice[.]" Majority Opinion at ¶21. In an extreme case, where such a sentence would be violative of due process, it would necessarily be clearly and convincingly contrary to law. Moreover, actual claims of judicial bias during sentencing must be remedied via a separate process: the filing of an affidavit of disqualification with the Ohio Supreme Court. *See State v. Donald*, 7th Dist. No. 09 MA 172, 2011-Ohio-3400, ¶13 ("An appellate court is without * * * to void a judgment on the basis that a judge should be disqualified for bias or prejudice.")

Given all of the foregoing, the R.C. 2953.08(G) clearly and convincingly contrary to law standard of review, rather than the two-part *Kalish* analysis, applies to felony sentences on appeal as a result of the General Assembly enacting H.B. 86. Applying the R.C. 2953.08(G)(2) standard of review to Hill's sentence, the trial court's decision should be affirmed, and thus I concur in judgment only.